IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORDAN MILES, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 10-1135<br>) |
| MICHAEL SALDUTTE, et al. | )<br>) |
| Defendants. | ) |

MEMORANDUM

Gary L. Lancaster                                                May 18, 2012
Chief Judge.

This is an action in civil rights. Miles alleges that three City of Pittsburgh Police Officers violated his rights under the United States Constitution and Pennsylvania law by subjecting him to excessive force during his arrest, and by arresting, imprisoning, and prosecuting him without probable cause. Miles seeks injunctive relief, as well as compensatory and punitive damages, and attorneys' fees.

Before the court are the Officers' motions for reconsideration [doc. no. 76] and to compel the deposition of Sonia Bush, an FBI Agent [doc. no. 78]. For the following reasons, we deny both motions.

Detailed facts regarding this matter can be found in this Court's previous opinions. [doc. nos. 41, 72]. We write solely for the parties, and therefore will only discuss relevant facts in the context of deciding the instant motions.

I.  Motion for Reconsideration

The Officers have filed a motion for reconsideration of our May 4, 2012 order denying their motion to compel a mental examination of Miles and their second motion to compel release of grand jury testimony. [doc. no. 76]. The Officers contend that "recently disclosed information and additional activities on the docket justify reconsideration." [Id. at p. 1].

The purpose of a motion for reconsideration is to correct manifest errors of law or fact, or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration may be granted if the moving party shows: (1) an intervening change in the controlling law; (2) the existence of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact, or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

A. Motion to Compel Mental Examination

According to the Officers, we must reconsider our previous order and now compel Miles to submit to a mental examination because Miles missed various discovery deadlines. Although the Officers have failed to include the applicable legal standards in their motion, it is evident that they are relying on the new evidence factor to support their motion for reconsideration. The Officers include a detailed timeline in their motion as a way to demonstrate that Miles' delinquencies justify the relief requested. However, what the timeline actually demonstrates is that the Officers have presented no new evidence that was not available when the court issued its order. Instead, all of the delayed disclosures and responses identified by the Officers occurred before we issued the May 4, 2012 order. Evidence is not new if the movant simply elected not to include it in previous filings. Evidence is new only if it was not "available when the court issued its order."

None of the evidence disclosed in the Officers' motion for reconsideration is new evidence. For example, the Officers complain that Miles did not disclose the report of Dr. Gorske, a treating psychologist, until November 23, 2011. While it is true that this is more than a month after fact discovery closed, it is also four months before the Officers filed their motion to compel a mental examination. Therefore, it is not new evidence.

3

Likewise, the Officers protest Miles' April 30, 2012 disclosure of reports from Drs. Leathers and Twichell, and his May 1, 2012 disclosure of an economic loss report. [doc. no. 76 at ¶¶ 18, 19, 22]. Again, these disclosures occurred while the motion to compel a mental examination was under advisement, and before we issued our May 4, 2012 order. As such, they also cannot qualify as new evidence.

Although this chronology alone makes these reports legally irrelevant to the Officers' motion for reconsideration, we make two additional observations regarding them in the interest of completeness. First, the Officers contend that the doctors' reports disclosed on April 30, 2012 were the first time that Miles asserted that his mental and emotional injuries are permanent. [doc. no. 76 at ¶ 21]. That is untrue. Miles alleged in his complaint in this action, which was filed on August 30, 2010, that his injuries, both physical and mental, were permanent. [doc. no. 1 at ¶ 28]. Miles' mental health injuries and damages were always at issue in this matter, regardless of whether, and when, he identified one, ten, or twenty witnesses on the topic.

It is apparent that the Officers knew that these types of injuries were relevant because they asked Miles to produce his medical records during discovery, which he did. Notably, Dr. Leathers' files were included among those records. In

4

addition, the Officers further inquired of Miles' mental health evaluations and treatments at his deposition in August of 2011. They were again told at that time that Miles was being evaluated and treated by Dr. Leathers. The Officers' persistent claims that they were unaware that Miles' mental injuries were an ongoing concern are not credible.

Second, the Officers argue that the only possible consequence of Miles' purported late disclosure of Drs. Leathers and Twichell's reports, as well as the economist's report, is that Miles must be forced to submit to a mental examination. However, the Officers' argument that this remedy follows inevitably from these disclosures is logically flawed.

The Officers were aware before Miles' August 2011 deposition that Miles was being treated by Dr. Leathers, a psychiatrist. The Officers did not seek conduct a mental examination of Miles. In November of 2011, shortly after the fact discovery period ended, the Officers were notified that Miles had been evaluated by Dr. Gorske, a psychologist. The Officers did ask Miles at that time if he would submit to a mental examination, yet inexplicably waited several months to file a motion to compel that examination after he refused. Notably, when the Officers finally did file that motion to compel, they did not inform the Court that they had asked Miles to voluntarily submit to the examination in December of 2011.

While that motion to compel was pending, Miles disclosed reports written by Drs. Leathers and Twichell, as well as by Mr. Kenkel, an economist. Regardless of the timing of these disclosures, the reports did not raise any novel facts or circumstances that created a need for a mental examination that did not previously exist. The best evidence of this fact is that the Officers had asked Miles to submit to a mental examination months before they received these reports from Drs. Leathers and Twichell, and Mr. Kenkel. The disclosures in April and May of 2012 are not what created the need for the Officers to conduct a mental examination of Miles. Consequently, the remedy of compelling a mental examination does not follow from the disclosure of these reports. While it is not inconceivable that another form of relief might have been justified under these circumstances, the Officers have not requested, nor provided any facts or arguments to support, the issuance of any relief other than compelling Miles to submit to a mental examination.

Because the Officers have failed to identify any new evidence, we deny their motion to reconsider as to the motion to compel a mental examination of Miles.

B.  Motion to Compel Release of Grand Jury Testimony

Next the Officers ask that we reconsider our previous order and compel release of the grand jury testimony of Ryan Allen[1] because the FBI did not produce its records until eleven days after the discovery cut-off date. [doc. no. 76 at ¶¶ 28, 37]. According to the Officers, an injustice would result if they are not granted access to Allen's grand jury testimony. [Id. at ¶¶ 32, 37]. This is the third time the Officers have asked this Court to compel the disclosure of Allen's secret grand jury testimony. Because this request comes before the Court as a motion for reconsideration, the Officers must demonstrate a change in the law, new evidence, or the need to correct a clear error of law or fact, or to prevent manifest injustice in order to secure the requested relief. Max's Seafood Café, 176 F.3d at 677. The Officers have again failed to discuss these legal standards in their motion, however it appears that they believe reconsideration is appropriate based on the new evidence and manifest injustice factors. We find that neither ground justifies reconsideration under the circumstances of this case.

---

[1] Although the Officers also sought the release of Zephon William's grand jury testimony in their first two motions seeking release of the grand jury testimony, their motion for reconsideration is directed only to the release of Ryan Allen's testimony.

As to the new evidence factor, the Officers explain that the FBI did not produce its records, which included Allen's statement to Agent Bush, until October 12, 2011. Although this was indeed eleven days after the fact discovery cut-off date, it is also more than six months before we issued the order of which the Officers seek reconsideration. As such, this is not new evidence. In addition, the Officers' investigators' report, which the Officers contend indicates that Allen plans to lie under oath at trial, was created more than five months before we issued the order. As such, this is also not new evidence. Regardless, the Officers were informed during Miles' August 2011 deposition that Miles spoke with Allen shortly after the January 2010 incident. Therefore, Allen's status as a witness is not a surprise to the Officers, irrespective of when the FBI produced its files, or when the Officers conducted their private interview with Allen. There is no new evidence or changed circumstances that would justify reconsideration of our prior order.

The Officers also contend that a grave and manifest injustice will result if Allen's grand jury testimony is not released because "Allen will be able to lie, under oath [at trial], not be confronted with his prior testimony, and potentially have that lie not revealed to the fact finders in this case." [doc. no. 76 at ¶ 33]. The Officers have been

making this same argument since they filed their first motion to compel release of the grand jury testimony in July of 2011. [doc. no. 30 at ¶¶ 13, 15; doc. no. 52 at pp. 4-6]. The argument carries no more weight ten months later, on a motion for reconsideration.

In short, the Officers contend that Allen admitted to FBI Agent Bush that Miles told him that he (Miles) had a bottle of Mountain Dew in his pocket on the night he was arrested, but then denied that Miles told him that when he was interviewed by the Officers' investigators in November of 2011. Notably, during this interview with the investigators, Allen acknowledged that he was provided with a copy of his FBI interview before his grand jury appearance, and testified to its content, in total, under oath before the grand jury. In other words, Allen admitted to the Officers' investigators in November of 2011 that although he testified before the grand jury that Miles told him shortly after the incident that he (Miles) had a Mountain Dew bottle in his pocket when he was arrested, he was now recanting that testimony. The investigators questioned Allen repeatedly on why he was changing his story now, and why he told the grand jury something that was not true. Allen was unable to provide any explanation, and speculated that Agent Bush wrote down his testimony incorrectly.

Had the Officers conducted this investigative interview, under oath, during a deposition, they, in fact, would have independently developed evidence of Allen's purported lies. That they chose not to do so, even though they knew since at least August of 2011 that Miles talked to Allen shortly after the incident, does not justify disclosure of secret grand jury testimony, no matter how many times the Officers argue that it does and no matter how "respectfully" they disagree with the Court's decisions. Regardless, as Miles is correct to point out, the grand jury transcript is not the only way to impeach Allen should he, in fact, testify at trial that Miles never told him that he (Miles) had a soda bottle in his pocket when he was arrested.

The Officers have not demonstrated that a manifest injustice will result if our prior order is not altered on reconsideration.

Because the Officers have failed to identify any new evidence or demonstrate that a manifest injustice will result, we deny their motion to reconsider as to the motion to compel release of Allen's grand jury testimony.

II. Motion to Compel Deposition of Agent Bush

Finally, the Officers have moved for an order compelling FBI Agent Sonia Bush to submit to a deposition. [doc. no. 78]. According to the Officers, they first became aware that Agent Bush was involved in the criminal investigation of this matter when the FBI produced its records on October 12, 2011. As an initial matter, we question the validity of this factual statement. The Officers knew of Agent Bush's involvement from the inception of this case because they, themselves, were interviewed by her in 2010, as part of the FBI investigation.

However, taking the Officers' contention to be true for purposes of deciding this motion, the Officers have still offered no explanation as to why they waited seven months since the FBI produced it records to pursue Agent Bush's deposition. Admittedly, the FBI records were produced more than a week after the fact discovery cut-off date. However, that does nothing to justify a seven month delay in seeking permission from this Court to take a deposition after the close of discovery.

The Officers' candidly admit that the real reason for the seven month delay is their incorrect assumption that Agent Bush would voluntarily assist them with their trial preparation. However, the FBI has refused to produce Agent Bush for an interview prior to her appearance at trial as a subpoenaed

witness. This is unfortunate for the Officers. However, it is not a justification for this Court to enter an order compelling the deposition of a party's own trial witness two months before trial and seven months after discovery has closed.

As a result, we deny the Officers' motion for an order compelling the deposition of FBI Agent Sonia Bush.

An appropriate order reflecting that we have denied both of the Officers' motions will be filed contemporaneously with this memorandum.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JORDAN MILES,               )
                            )
        Plaintiff,           )
                            )
    v.                       )    Civil Action No. 10-1135
                            )
MICHAEL SALDUTTE, et al.     )
                            )
        Defendants.          )

ORDER

AND NOW, this 15th day of May, 2012, it is HEREBY ORDERED that the Officers' motion for reconsideration [doc. no. 76] is DENIED; and

IT IS FURTHER ORDERED that the Officers' motion to compel the deposition of Sonia Bush [doc. no. 78] is DENIED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record